FERRELLGAS, INC., Plaintiff–
counter–defendant–
Appellee,

v.

HARTFORD ACCIDENT & INDEMNI-
TY COMPANY, Defendant–cross–
defendant–Appellant,

and

Granite State Insurance Company, Inc.;
Defendant–cross–defendant–
Appellee,

and

American Premier Underwriters, f/k/a
the Penn Central Corporation, De-
fendant–cross–claimant–Appellee.

Ferrellgas, Inc., Plaintiff-
counter-defendant,

v.

American Premier Underwriters, f/k/a
the Penn Central Corporation, De-
fendant–cross–claimant–Appellant,

v.

Hartford Accident & Indemnity Compa-
ny; Granite State Insurance Compa-
ny, Inc., Defendants–cross–defen-
dants–Appellees.

FERRELLGAS, INC., Plaintif f-
counter-defendant-Appellee-
cross-Appellant,

and

American Premier Underwriters, f/k/a
the Penn Central Corporation,
Defendant-cross-claimant,

v.

Hartford Accident & Indemnity Compa-
ny, Defendant–cross–defendant–Ap-
pellant/Cross–Appellee,

and

Granite State Insurance Company, Inc.,
Defendant-cross-defendant.

Nos. 00–55338, 00–55451, 00–55470.
D.C. No. CV–94–00060–RT.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 2001.

Decided May 21, 2001.

Before MAGILL,* MCKEOWN, and FISHER, Circuit Judges.

## MEMORANDUM **

Hartford Accident & Indemnity Company ("Hartford") appeals the district court's summary judgment ruling that the primary insurance policy and its endorsements (collectively the "Policy") issued to Penn Central Corporation and its subsidiaries obligated Hartford to pay $2 million in excess of the deductible. We review a grant of summary judgment de novo. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc).

An insurance policy is a contract and interpreted in accordance "with the rules of construction applicable to contracts." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878, 888 (Cal.1995). "The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 626 (Cal.1995) (*citing* Cal Civ. Code, § 1638). If the language is ambiguous, we can consider extrinsic evidence to clarify the parties' intentions. *Pac. Trans. Co. v. Santa Fe Pipelines, Inc.*, 74 Cal. App.4th 1232, 88 Cal.Rptr.2d 777, 783 (Cal. Ct.App.1999) (*citing Pac. Gas & E. Co. v. G.W. Thomas Drayage & Rigging Co., Inc.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 644 (Cal.1968)).

We conclude that the Policy's language is unambiguous and agree with Hartford's interpretation of how the deductible and Policy limits work. Although the Policy may not be a typical "fronting policy" in all respects, it has at least one similar feature: the deductible, at times, matches the policy limits. The Policy sets per occurrence and aggregate limits of liability at $2 million. The Policy also explicitly provides that the per occurrence limit of liability is "subject to the deductible" set forth in Endorsement #3. Until the insured pays out an annual total of $5 million in deductibles, the per occurrence deductible matches the liability limits at $2 million.[1] After that point, the deductible reduces to $250,000. We read the "subject to" language in the context of the entire Policy to mean that the deductible is *deducted* from the liability limits; the deductible is not a "self-insured retention."

---

* The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. The parties stipulated that the $5 million annual aggregate deductible had not been exceeded.

*See United States Elevator Co. v. Associated Int'l Ins. Co.*, 215 Cal.App.3d 636, 263 Cal.Rptr. 760, 762 (Cal.Ct.App.1989) (holding that where the $500,000 deductible equaled the $500,000 limit of liability, the insured effectively had no indemnity coverage). Appellees point to language in Endorsement # 3 they contend supports their position that Hartford's liability is triggered only after the deductible was paid.[2] That language states only that Hartford has no obligation on damages within the deductible. It says nothing about whether the policy limits apply above the deductible or are subsumed within it. Read together with the rest of the Policy, we read that language to mean that Hartford is obligated to pay damages only above the deductible and below the $2 million policy limit.

Even if we were to conclude that the Policy's deductible and liability limit language is ambiguous, the extrinsic evidence, as at least one Appellee admits, supports the conclusion that the deductible was intended to be subtracted from the liability limits. In summary, the district court incorrectly construed the Policy to provide $2 million in coverage above and beyond the $2 million deductible. The primary insurance policy does not obligate Hartford to pay any money for the Hightower judgment.

Accordingly, we vacate the final judgment entered on January 18, 2000 and all orders that were premised on the district court's erroneous interpretation of the Policy. Because we conclude that Hartford is not obligated under the primary policy, the appeals of the denial of the leave to amend the complaint and the orders regarding pre-judgment interest are moot. We re-

mand for further proceedings consistent with this disposition.

REVERSED and REMANDED.

---

2. Specifically: "The company's obligation under all coverages ... to pay damages ... on behalf of the Insured applies only to the amount of damages in excess of the deductible amounts stated in the schedule below as applicable to such coverages."

